UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CORNERWORLD CORPORATION,

       Plaintiff,

                                File No.  1:09-CV-1124

v.

                                HON. ROBERT HOLMES BELL

NED TIMMER,

       Defendant.

_____/

## **O P I N I O N**

This matter is before the Court on Plaintiff CornerWorld Corporation's motion to dismiss Defendant Ned Timmer's counterclaim for declaratory and injunctive relief. (Dkt. No. 44.) CornerWorld seeks partial summary judgment as to paragraph 22(a) of Timmer's counterclaim and dismissal of the remaining allegations of the counterclaim for failure to state a claim.

## I.

Timmer's counterclaim seeks declaratory and injunctive relief based on eight alleged defaults under the transaction documents. (Dkt. No. 41, Countercl. ¶¶ 22, 25.)

The defaults alleged in paragraph 22 are the original defaults that were before the Court on the parties' cross-motions for a preliminary injunction:

a. Plaintiff caused funds to be transferred among affiliates without Timmer's consent for each transfer and without Timmer's consent to a budget for such transfers;

b. Ned Timmer is advised that Plaintiff will continue to cause transfers to be made among Plaintiff's affiliates without Timmer's consent for each transfer and without Timmer's consent to a budget for such transfers;

c. Defendant, through its subsidiary, Enversa, undertook new business ventures called Tiny Dial and MAP Telecom that, upon information and belief, involved agreements between Plaintiff and its subsidiaries without Timmer's approval.

d. Plaintiff failed to comply with the Collateral Perfection agreements until ordered to do so by this Court.

(Countercl. ¶ 22.)

In paragraph 25, Timmer alleges four new defaults:

a. Failing to perform its payment obligations under the transaction documents, including but not limited to failing to make payments to IU Investment as required under the transaction documents for December – March, 2010.

b. Failing to provide financial information requested by Ned Timmer as a director and creditor.

c. Failure of Plaintiff's subsidiary, Woodland Holdings, to close on the purchase of Phone Services and More and T2 Communications pursuant to Unit Purchase Agreement.

d. Plaintiff has failed to account properly for various expenses under the Earn Out Agreement which will cause inaccurate calculations of Ned Timmer's earn out payments.

(Countercl. ¶ 25.)

**II.**

CornerWorld seeks summary judgment on Timmer's allegation in ¶ 22(a) that CornerWorld caused funds to be transferred without his consent or approval of a budget.

Summary judgment should be granted in favor of a moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Defendant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Defendant on his counterclaim. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

CornerWorld contends that it is entitled to summary judgment on Timmer's allegations in ¶ 22(a) because they are contradicted by Timmer's own testimony.

Section 5(m) of the Secured Debenture permits transfers of funds pursuant to a budget

approved by Timmer.[1]  (Dkt. No. 41, Countercl. Ex. 2, Sec. Deb. § 5(m).)  At the preliminary

injunction hearing, this Court received evidence concerning the CornerWorld budget.  Scott

Beck testified that Timmer approved the budget at the August 3, 2009, board meeting.  (Dkt.

No. 24, Prelim. Inj. Tr. 41, 49.)  The minutes of the August 3 meeting merely indicate that

the budget was discussed, but the minutes from the following meeting on August 27, 2009,

reflect that the budget was approved at the August 3 meeting.  (Prelim. Inj. Ex. 16.)  Timmer

participated in these Board meetings, and did not object to the minutes or to the lack of a

budget.  (Prelim. Inj. Tr. 95.)  Timmer testified that he did not object to transfers that were

made to pay interest and principal on the IU note or to the monthly interest paid directly to

him, (*Id.* at 92-93), and that he understood that transfers would have to be made to

CornerWorld for its operating expenses (*Id.* at 100-101).  This Court found that "[Timmer's]

silence against the background of the other evidence suggested that a budget was adopted,

and that CornerWorld's transfer of funds without Timmer's approval was not an event of

default."  (Dkt. No. 12, 12/22/2009 Op. 10.)

Now, in his affidavit in opposition to summary judgment, Timmer asserts that "[i]n

August 2009, a Cornerworld budget was discussed during Board Meetings, but I never

consented to a Budget.  The Budget that was discussed did not provide for transfers."  (Dkt.

No. 58, Ex. 9, Timmer Aff. ¶ 10.)

---

[1]"[O]ther than as set forth on a budget agreed upon by Woodland and Holder [Timmer], it shall not, and it shall cause each Subsidiary not to, transfer cash to any Affiliate, without Holder's prior written consent."  (Sec. Debenture § 5(m).

CornerWorld contends that Timmer cannot file an affidavit that directly contradicts his sworn testimony regarding the budget. *See Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) ("When a motion for summary judgment has been filed, a party cannot create a factual issue by filing an affidavit which contradicts earlier testimony." ).

Upon review, it appears to the Court that while Timmer's affidavit goes against the weight of the evidence presented at the preliminary injunction hearing, it does not directly contradict his testimony. Moreover, "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits." *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)). The Court is satisfied that there is a question of fact as to whether Timmer approved the budget at the August 3, 2009, meeting. In addition, Timmer contends that there is an issue of fact as to whether transfers were made that were not provided for in the budget. In support of this contention, Timmer has provided the affidavit of Peter Lazor, who states that the financial statements of CornerWorld reflect transfers that exceed the budget. (Dkt. No. 58, Ex. 12, Lazor Aff. ¶ 5.) Timmer contends that he needs further discovery to investigate the actual amounts of the transfers, and to determine whether they were made without his consent.

In its reply brief, CornerWorld argues that Timmer cannot avoid summary judgment based on an asserted need for discovery because he has not filed a Rule 56(f) affidavit.

CornerWorld also contends that Peter Lazor's affidavit is not accurate, as reflected in Lazor's deposition testimony.

Rule 56(f) provides that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny the motion. Fed. R. Civ. P. 56(f). Although Timmer has not filed anything labeled as a Rule 56(f) affidavit, his own affidavit states that he has not been permitted to audit CornerWorld's financial records, and he has shown, through Lazor's affidavit, that he has a basis for believing that further discovery will yield specific information that he needs in order to defend against CornerWorld's motion for summary judgment. Whether Lazor's affidavit is accurate or not is a question of fact.[2]  Accordingly, the Court is satisfied that Timmer has met the requirements of Rule 56(f) as to the issue of whether transfers were made outside of the budget that were not approved by Timmer. The Court will accordingly deny CornerWorld's motion for summary judgment as to ¶ 22(a).

## III.

CornerWorld contends that the remaining allegations of default in Timmer's counterclaim are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

"[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some

---

[2]Lazor's deposition testimony is not attached to CornerWorld's reply.

viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). In reviewing the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). The complaint's factual allegations must be enough to "raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *In re Travel Agent Comm'n*, 583 F.3d at 903 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion under Rule 12(b)(6) the Court may consider any document that is an exhibit to a pleading, Fed. R. Civ. P. 10(c), and any document that is referred to in the pleading and is central to the pleader's claim. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## A. Future Transfers ¶ 22(b)

CornerWorld contends that ¶ 22(b) is subject to dismissal because it alleges anticipated future defaults that have not yet occurred. In addition, CornerWorld contends that the required notice of default has not been given. Timmer has not responded to CornerWorld's argument regarding ¶ 22(b).

"[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Winget v. JP Morgan Chase Bank N.S.*, 537 F.3d 565, 581-82 (6th Cir. 2008) (quoting *Cooley v. Granholm*, 291 F.3d 880, 883-84 (6th Cir. 2002)). Because Timmer's allegation in ¶ 22(b) rests upon contingent future events, it is not ripe for adjudication. Paragraph 22(b) will accordingly be dismissed.

**B. New Business Ventures, ¶ 22(c)**

CornerWorld contends that Timmer's allegation regarding new business ventures is subject to dismissal because the covenant at issue does not apply to Enversa.

Section 5(e) of the Secured Debenture provides that "each Issuer" agrees that "it shall not engage in any material business other than the business it engaged in at the Original Issue Date or any activities directly related thereto." (Sec. Deb., p. 1, & § 5(e) p. 6.) Under the Secured Debenture, the "Issuers" are CornerWorld and Woodland Holdings Corp. (Sec. Deb. p. 1). CornerWorld contends that because Enversa is not an Issuer, Timmer's claim in ¶ 22(c) does not state a claim on which relief may be granted.

Timmer's claim in ¶ 22(c) is not only that Enversa has entered into new business ventures, but that its new ventures "involved agreements between Plaintiff and its subsidiaries without Timmer's approval." (Countercl. ¶ 22(c).) Timmer contends that Enversa has partnered with Woodland in the Tiny Dial venture. The Court is satisfied that Timmer's allegations are sufficient to state a claim of default under § 5(e) of the Secured Debenture. Accordingly, CornerWorld's motion to dismiss ¶ 22(c) will be denied.

8

## C. Collateral Perfection Agreement, ¶22(d)

CornerWorld contends that it is entitled to dismissal of the alleged default concerning the collateral perfection agreement because Timmer has conceded in his amended counterclaim ¶ 22(d) n.1 that CornerWorld "has provided a Control Agreement."[3]  In response, Timmer contends that the Control Agreements are still not in place because CornerWorld continues to use accounts at Comerica without control agreements.

Timmer presents a moving target with regard to the Control Agreement.  His current contentions regarding the use of corporate accounts without control agreements is not covered by the allegations in his counterclaim.  Furthermore, the allegations appear to be without merit.  The parties entered into two security agreements.  Under one security agreement, Timmer was granted a security interest in the deposit accounts of S Squared, LLC , West Michigan Co–Location Services, LLC, and T2 TV, LLC.  (Countercl. Ex. 3, Security Agrm't ¶ 1(a); Ex. A-3, ¶ 6; Ex. A-4, ¶ 6; Ex. A-5, ¶ 6.)  Under the other security agreement, Timmer was granted a security interest in the deposit accounts of CornerWorld Inc., and Enversa Companies LLC.  (Dkt. No. 8, Ex. 3, Security Agrm't ¶ 1(a); Ex. A-2, ¶ 6; Ex. A-3, ¶ 6.)  This security agreement clearly distinguishes between CornerWorld Corporation and CornerWorld Inc..  (*Id.*)  The only security interest Timmer was granted in the personal

---

[3]Note 1 states in full that "Plaintiff has provided a Control Agreement but has yet to provide evidence that the accounts under the Control Agreements have been created and created in a manner such that Ned Timmer has access to view the accounts."  (Countercl. ¶ 22(d) n.1.)

property of CornerWorld Corporation was in stock certificates. (*Id.* at Ex. A-1, ¶¶ 1, 2.) Neither of the security agreements grants Timmer a security interest in the deposit accounts of CornerWorld Corporation. Timmer's complaint that CornerWorld continues to maintain its Comerica accounts is particularly nonsensical in light of the fact that the Secured Debenture requires CornerWorld to "maintain all bank accounts at Comerica Bank." (Sec. Deb. § 5(q).)

Because Timmer has conceded that Plaintiff has provided a Control Agreement, and because the documents do not support the existence of a security interest in the deposit accounts of CornerWorld Corporation, Timmer has failed to state a claim on which relief can be granted in ¶ 22(d). Paragraph 22(d) will accordingly be dismissed.

## D. Notice re New Defaults, ¶¶ 25(a)-(c)

CornerWorld asserts that it is entitled to dismissal of the defaults alleged in paragraphs 25(a)-(c) because Timmer has not given notice and an opportunity to cure.

Timmer does not challenge CornerWorld's assertion that he failed to give notice of these alleged defaults. Instead, he contends that these paragraphs allege events of default that are not subject to a 30-day notice provision, either because they represent defaults of transaction documents, under § 6(a)(iii), or because they fall within the "material adverse event" default under § 6(a)(x) of the Debenture.

Under § 6(a)(iii), it is an event of default if there is a default or event of default under any of the transaction documents. By its own terms, an event of default under this provision is not subject to the 30-day notice provision.

Contrary to Timmer's assertions, his claims in paragraphs 25(a), (b), and (c) allege, at best, violations of covenants in the agreements, rather than a default under those agreements. For example, Timmer has asserted that CornerWorld's failure to provide requested financial information is a violation of § 5(h) and § 5(q) of the Secured Debenture. Section 5 of the Secured Debenture is clearly labeled "Covenants." Violations of covenants in agreements are covered by § 6(a)(ii), and are subject to a 30-day notice requirement. To interpret a covenant violation as a default would make § 6(a)(ii)'s notice provision meaningless, because any violation of a covenant could be recast as a default, for which no notice is required. Contracts must be interpreted as a whole to avoid rendering any provisions meaningless. *Madison Hudson Assocs. LLC v. Neumann*, 44 A.D. 3d 473, 480; 843 N.Y.S.2d 589 (2007).

In the alternative, Timmer contends that the allegations in paragraphs 25(a)-(c) constitute material adverse event defaults.

"Event of Default" is defined in the Secured Debenture to include "any event that has, or could reasonably be expected to have, a Material Adverse Effect." (Sec. Deb. § 6(a)(x).) An event that has a "Material Adverse Effect" is not subject to a 30-day notice requirement. (*Id.*) "Material Adverse Effect" is defined to include "(c) any Issuer's ability to perform in

11

any material respect on a timely basis its obligations under any Transaction Document."[4] (*Id.* at § 1.)

Timmer contends that a "material adverse effect" is defined to include an event that results in Plaintiff **not performing** its timely obligations under the transaction documents, even though there may not be a declared default. Timmer misconstrues the definition of "Material Adverse Effect." The definition focuses on the Issuer's **ability** to perform, not on its **failure** to perform. Timmer's assertion that CornerWorld failed to perform its payment obligations, that CornerWorld failed to provide financial information requested by Timmer, and that Woodland Holdings failed to close on two purchases are not allegations that CornerWorld or Woodland Holdings was **unable** to perform its obligations on a timely basis.

---

[4]The full definition reads as follows:

> "Material Adverse Effect" means an effect that results in or causes, or could reasonably be expected to result in or cause, a material adverse effect on (a) the legality, validity or enforceability of any Transaction Document, (b) the results of operations, assets, business or condition (financial or otherwise) of the Issuers and the Subsidiaries, taken as a whole, other than any such effect that results or arises from or relates to (i) changes in general economic or market conditions or prevailing interest rates, (ii) changes, circumstances or effects generally affecting the business or industry in which such party operates that do not have a disproportionate adverse impact on such entity, (iii) changes in applicable accounting principles or rules, or (iv) changes in generally applicable laws, regulations or interpretations, with respect to each of (i) through (iv) above, to the extent that such changes, circumstances or effects do not have a disproportionate adverse impact on the Issuers and the Subsidiaries, taken as a whole or (c) any Issuer's ability to perform in any material respect on a timely basis its obligations under any Transaction Document.

12

Accordingly, Timmer has failed to state a claim on which relief can be granted in paragraphs 25(a)-(c). Paragraphs 25(a)-(c) will accordingly be dismissed.

**E. Earn Out Agreement, ¶ 25(d)**

CornerWorld asserts that because disputes under the Earn Out Agreement are subject to arbitration, Timmer's claim of default based on the Earn Out Agreement must be dismissed. Even though Timmer agrees that disputes under the Earn Out Agreement are subject to arbitration, he opposes dismissal of the Earn Out Agreement allegation because he contends that CornerWorld's failure to pay under the Earn Out Agreement is also an event of default under § 6(a)(iii) of the Debenture, or, is a "material adverse event" default under § 6(a)(x).

The Earn Out Agreement specifically provides for arbitration of disputes that arise under that agreement. Based upon the specificity of the arbitration remedy provided under the Earn Out Agreement, the Court concludes that unless and until a dispute under the Earn Out Agreement has been arbitrated, it is not ripe for consideration as an event of default. Accordingly, the Court will dismiss ¶ 25(d).

An order consistent with this opinion will be entered.

Dated: <u>November 16, 2010</u>                              /s/ Robert Holmes Bell
                                                                           ROBERT HOLMES BELL
                                                                           UNITED STATES DISTRICT JUDGE